**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **COREY REED**, an individual, and **SEAN GORECKI**, an individual, | ) | **Case No. 1:17-cv-04946** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **Trial by Jury Demanded** |
| | ) | |
| **GRUBHUB HOLDINGS INC.** and **GRUBHUB, INC.**, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF,
CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF**

Plaintiff Corey Reed and Plaintiff Sean Gorecki (collectively "Plaintiffs"), by and through

their attorneys, for their amended complaint against GrubHub Holdings, Inc., and GrubHub, Inc.,

states as follows:

**INTRODUCTION**

1.      Plaintiff Corey Reed is a blind and visually-impaired person who requires screen-reading software to read website content using his computer and on his iPhone.

2.      Plaintiff Sean Gorecki is a blind and visually-impaired person who requires screen-reading software to read website content using his computer.

3.      Plaintiffs use the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some blind people who meet this definition have limited vision.  Others have no vision.

4.      Plaintiffs bring this civil rights action against Defendants GRUBHUB HOLDINGS

INC. and GRUBHUB INC. ("Defendants" or "GrubHub Holdings and GrubHub") for their failure to design, construct, maintain, and operate the website, GrubHub.com (the "website" or "Defendants' website") to be fully accessible to and independently usable by Plaintiffs and other blind or visually-impaired people.

5.      Plaintiffs further bring this civil rights action against Defendants for their failure to design, construct, maintain, and operate their mobile application (the "mobile app" or "Defendants' app") to be fully accessible to and independently usable by Plaintiffs and other blind or visually-impaired people.

6.      Defendants' denial of full and equal access to its website and mobile app, and therefore denial of its products and services offered thereby, is a violation of Plaintiffs' rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

7.      Because Defendants' website, GrubHub.com and its mobile app are not fully and equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiffs seek a permanent injunction to cause a change in Defendants' corporate policies, practices, and procedures so that Defendants' website and mobile app will become and remain accessible to blind and visually-impaired consumers, including Plaintiff.

**JURISDICTION AND VENUE**

8.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiffs' claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

9.      This court has supplemental jurisdiction over Plaintiffs' non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiffs' UCRA claims are so related to Plaintiffs' federal ADA claims, they form part of the same case or controversy under Article III of the United States

Constitution

10.    This Court has personal jurisdiction over Defendants because they are deemed residents of the State of Illinois and they conduct and continue to conduct a substantial and significant amount of business in the State of Illinois.

11.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(1) because Defendants reside in this District and this Court has personal jurisdiction over Defendants.

## PARTIES

12.    Plaintiff Corey Reed, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is also blind, visually-impaired, a person with a disability, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

13.    Plaintiff Sean Gorecki, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is also blind, visually-impaired, a person with a disability, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

14.    Plaintiffs are informed and believe, and thereon allege Defendants GRUBHUB HOLDINGS INC. and GRUBHUB INC. are a food delivery service, which provide food delivery to customers in cities throughout the country via an on-demand dispatch system, and their headquarters are located in Chicago, Illinois.

15.    Defendants' mobile app and website advertise that "GrubHub is the nation's leading online and mobile food ordering company dedicated to connecting hungry diners with local takeout restaurants." GrubHub provides consumers with access to an array of goods and

services including online ordering for food delivery and pick up, lists of participating restaurant locations, menus, information about menu items, coupons, offers and discount codes, access to gift cards, and many other benefits related to these goods and services.

16.     Defendants' website and mobile app area public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) because the GrubHub website and mobile app are, or are part of, a "sales or rental establishment," and a "service establishment."

17.     Defendants have been and are committing the acts or omissions alleged herein in Los Angeles County of the State of California which caused injury, and violated rights prescribed by the ADA and UCRA, to Plaintiffs and to other blind and other visually impaired-consumers.  A substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in California. Specifically, on several separate occasions, Plaintiffs have been denied the full use and enjoyment of the facilities, goods, and services of Defendants' website and mobile app in Los Angeles County. The access barriers Plaintiffs encountered on Defendants' website and mobile app have caused a denial of Plaintiffs' independent, full and equal access multiple times in the past, and now deter Plaintiffs on a regular basis from accessing Defendants' website and mobile app.

**THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET**

18.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.  As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence.  Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer

screen. This technology is known as screen-reading software. Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person may employ to fully and independently access the internet.

19.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately.

20.     Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

21.     For blind and visually-impaired users of Apple operating system-enabled computers and devices, the screen-reading software available and built into all Apple products is VoiceOver. Apple's devices, including the iPhone, have the VoiceOver program integrated into their iOS operating system for use by blind and visually-impaired users, including Plaintiff.

22.     For screen-reading software to function, the information on a website must be capable of being rendered into meaningful text. If the website content is not capable of being rendered into meaningful text, the blind or visually-impaired user is unable to access the same content available to sighted users using their keyboard because they are unable to see the screen or manipulate a mouse as a sighted person can.

23.     Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet, websites and other digital content.

24.     If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website or mobile

app that is available to sighted users.

25.     There are well-established industry adopted guidelines for making websites accessible to visually-impaired people who require screen-reading software programs. These guidelines have existed for at least several years and are successfully followed by large business entities who want to ensure their websites are accessible to all persons. The Web Accessibility Initiative ("WAI"), an initiative of the World Wide Web Consortium developed guidelines on website accessibility. Through Section 508 of the Rehabilitation Act, the federal government also promulgated website accessibility standards. These guidelines, easily found on the Internet, recommend several basic components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible and by adding structured headings so blind and visually-impaired people can navigate websites just as sighted people do. Without these basic components, websites are inaccessible to a blind person using screen-reading software.

26.     Some of the Success Criteria contained in WCAG 2.0 is also assistive for businesses to make mobile websites equally accessible to blind and visually-impaired users of the iPhone and other operating systems. Apple, the developer and manufacturer of iPhones, also provide iOS accessibility guidelines for its mobile devices like the iPhone, which assist iOS developers to make mobile websites accessible to blind and visually-impaired individuals.  Apple's guidelines are available online at:

https://developer.apple.com/library/ios/documentation/UserExperience/Conceptual/iPhoneAccessibility/Introduction/Introduction.html.

27.     Inaccessible or otherwise non-compliant websites pose significant access barriers to blind and visually-impaired persons.

28.     Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.      A text equivalent for every non-text element is not provided;

b.      Title frames with text are not provided for identification and navigation;

c.      Equivalent text is not provided when using scripts;

d.      Forms with the same information and functionality as for sighted persons are not provided;

e.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the

component;

n.    Labels or instructions are not provided when content requires user input;

o.    In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.    Inaccessible Portable Document Format (PDFs); and,

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including screen-reading software.

## DEFENDANTS' FAILURE TO MAKE ITS WEBSITE AND MOBILE APP ACCESSIBLE AND PLAINTIFFS' ATTEMPTS TO ACCESS

29.    Defendants offer the commercial website, GrubHub.com and its mobile app to the public.

30.    The website and mobile app offer features which should allow all consumers to access the goods and services which Defendants offer and should allow consumers to locate physical locations where Defendants' products may be purchased by consumers.

31.    The goods and services offered by Defendants include, but are not limited to the following, which should allow all consumers to: order food online for pick-up and delivery, find participating restaurant locations, browse menus, find information about menu items, learn about coupons, offers and discount codes, purchase gift cards, and many other benefits related to these goods and services.

32.    Based on information and belief, it is Defendants' policy and practice to deny

Plaintiffs, along with other blind or visually-impaired users, access to Defendants' website and mobile app, and to therefore specifically deny the goods and services that are offered therein and available at its restaurants.

33.     Due to Defendants' failure and refusal to remove access barriers to its website and mobile app, Plaintiffs and visually-impaired persons have been and are still being denied equal access to the numerous goods, services, and benefits offered to the public through GrubHub.com and its mobile app.

34.     Plaintiffs cannot use a computer without the assistance of screen-reading software.

35.     However, both Plaintiffs are proficient users of the JAWS screen-reader and use it to access the internet.

36.     Plaintiffs visited GrubHub.com on several separate occasions using the JAWS screen-reader.

37.     Plaintiffs also regularly and proficiently use iPhones and their built-in screen reader, VoiceOver, to access online content found on websites and mobile applications.

38.     Plaintiffs attempted to use Defendants' mobile app on their iPhones on several separate occasions using the VoiceOver screen reader.

39.     During several separate visits to Defendants' website Plaintiffs encountered multiple access barriers which denied Plaintiffs full and equal access to the facilities, goods and services offered to the public and made available to the public on Defendants' websites.

40.     During several separate visits to Defendants' mobile app, Plaintiffs encountered multiple access barriers which denied Plaintiffs full and equal access to the facilities, goods and services offered to the public and made available to the public on Defendants' mobile app.

41.     Due to the widespread access barriers Plaintiffs encountered on Defendants'

website and mobile app, Plaintiffs have been deterred, on a regular basis, from accessing Defendants' website and mobile app and have prevented them from full and equal access of Defendants' goods and services.

42.     Similarly, the access barriers Plaintiffs encountered on Defendants' website and mobile app have deterred Plaintiffs from visiting or locating participating brick-and-mortar restaurants to purchase products via GrubHub.

43.     While attempting to navigate GrubHub.com, Plaintiffs encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to:

> a.     The home page has graphics, links, and buttons that are not labeled or are incorrectly labeled, or lack alternative text ("Alt-text"). Alt-text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures. Alt-text does not change the visual presentation, but instead a text box shows when the cursor moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics.

> b.     Plaintiffs encountered multiple unlabeled or mislabeled buttons and links. Without descriptive alternate text, Plaintiffs, and other screen reader users, have no clue about the purpose or function of the button or link;

> c.     While trying to browse the home page, Plaintiffs would frequently become trapped in form field and then automatically redirected to the top of the page. This made navigation extremely frustrating and time consuming, as each time it happened, Plaintiffs had to start over and attempt to navigate around the traps;

d.  For example, on the home page, while scrolling a screen-reader user Plaintiff Sean Gorecki heard "unlabeled 3 button."  A few tabs later, next to a form field to enter a zip code, he heard "unlabeled 1 button."

e.  In another form field on the home page, Mr. Gorecki encountered the phone number (555) 555-1212 and thought it might be a number to call. Instead, it was a field meant for a user to enter their phone number.

f.  On another part of the page, Mr. Gorecki heard "press.grubhub.com link" repeated six times in a row.  He did not know if this was a slideshow or just a long string of mislabeled links.

g.  Mr. Gorecki encountered another unlabeled form field that only said "edit required type in text." When he scrolled up and down and back up, he had a confusing sequence.  The first field said "e-mail" and the second field just said "edit." But going up, the second field said "zip code" and the first field just said "edit" which Mr. Gorecki found very confusing.

h.  Also on the home page, Plaintiff Sean Gorecki heard a long list of cities, food types and other information. At the bottom of the page, he heard "content end," which typically means the end of everything on the site.  But when he hit the down arrow again he heard "Dialogue Window Close Button."  Further down, Mr. Gorecki heard a dialogue window information about getting $7 off his first order followed by another unlabeled edit field.  The dialogue box should have been announced from the beginning and if he had not accidentally hit the down arrow once more, he would never have known it was there.

i.  In the gift cards section, a screen reader user cannot select a gift card design or

11

get any information about what the designs are. Additionally, the calendar to select a delivery date is inaccessible to screen-readers.

j.   Screen reader users could not select a restaurant through the headings because they are not labeled as clickable or accessible with the TAB key.

k.   When Plaintiff Sean Gorecki found a restaurant he wanted, he found perusing the menu very difficult and could only find the most popular menu items rather than the full menu. He also found that to select an item he had to navigate a very confusing and lengthy list form to edit a single item. Just scrolling through the form without selecting any changes took Mr. Gorecki several minutes. Because the whole site was so confusing and took so long to edit and select a single item, Mr. Gorecki was too discouraged to try to complete an order and determine if it was even possible.

l.   When Plaintiff Corey Reed found a local restaurant and selected the cheeseburger from the online menu he was prompted to select from a list box how he would like his cheeseburger cooked; however, the combo box was not accessible and each time Mr. Reed tried make an entry in the form field he was redirected to the top of the page, at which point he would have to start over. Because a selection was required to move forward with the order, Mr. Reed was unable to complete his order.

44.   In May, 2017, Plaintiff Corey Reed attempted to do business with Defendants on GrubHub.com and he encountered barriers to access the website.

45.   In July 2017, Plaintiff Sean Gorecki attempted to do business with Defendants on GrubHub.com and he encountered barriers to access the website.

46.     In May, 2017, Plaintiff Corey Reed also attempted to access Defendants' mobile app, sought additional information about Defendants' goods and services offered, and attempted to do business with Defendants using the GrubHub iOS mobile app. Mr. Reed was unable to access information contained on the mobile app or browse the mobile app due to accessibility barriers that made the mobile app inaccessible. While trying to navigate Defendants' mobile app, Mr. Reed encountered similar access barriers to the ones encountered on Defendants' website. The accessibility barriers included, but were not limited to encountering a lack of alt-text for images and graphics, inaccessible forms, unlabeled or mislabeled buttons, inaccessible image maps, and a lack of any adequate prompting and labeling.  In addition to similar issues of non-descriptive and uninformative link text, which made it impossible to effectively and efficiently navigate the mobile app, the mobile app altogether lacked navigational headings.  Headings are essential for screen reader users to more easily understand the page structure and to find what they are looking for. Without headings, screen reader users are forced to painstakingly read the entire page from beginning to end, rather than jump between headings to streamline navigation.

47.     Also in May, 2017, Plaintiff Sean Gorecki attempted to access Defendants' mobile app, sought additional information about Defendants' goods and services offered, and attempted to do business with Defendants using the GrubHub iOS mobile app.  Mr. Gorecki also encountered similar access barriers to the ones encountered on Defendants' website. While attempting to navigate mobile app, Plaintiff Sean Gorecki encountered multiple accessibility barriers for blind or visually-impaired people that made the mobile app entirely inaccessible, because of access barriers that include but are not limited to:

    a.     Unlabeled buttons all over the mobile app that just say "button."

    b.     The businesses have buttons that are not accessible using a screen reader like

13

"rating 1."

    c.    Each restaurant has bullet points that does not verbalize anything next to it.

    d.    Nothing is read to the screen reader user that says any of the restaurants are clickable, so the user does not know where to select to check further into a menu.

    e.    The menus are obnoxious to sift through because instead of categories, the restaurants have multiple page menus that require a screen reader user to go through item by item.

    f.    When Plaintiff Sean Gorecki selected an item, he could not find the checkout bag without much difficulty, which turned out to be at the end of an 18 page menu.

    g.    Plaintiff Sean Gorecki was discouraged from placing an order because he did not know what most of the buttons meant and unlabeled links and buttons do not register as clickable, which made the mobile app difficult if not impossible to fully and independently navigate.

48.    Despite past and recent attempts to do business with Defendants on their website and mobile app, the numerous access barriers contained on the website and mobile app Plaintiffs encountered have denied Plaintiffs full and equal access.

49.    Plaintiffs, as a result of the barriers on Defendants' website and mobile app, continue to be deterred on a regular basis from accessing Defendants' website and mobile app.

50.    Due to the inaccessibility of GrubHub.com and the mobile app, blind and visually-impaired consumers, such as Plaintiffs, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendants offer to the public on their website and mobile app.

51.    The access barriers Plaintiffs encountered on Defendants' website and mobile app

have caused a denial of Plaintiffs' full and equal access multiple times in the past, and now deter Plaintiffs on a regular basis from accessing Defendants' website and mobile app.

52.     In addition, the access barriers Plaintiffs encountered on Defendants' website and mobile app have deterred Plaintiffs from ordering from the physical restaurants via GrubHub.

53.     If GrubHub.com and the mobile app were equally accessible to all, Plaintiffs could independently navigate Defendants' website and mobile app and complete a desired transaction as sighted individuals do.

54.     Having made many attempts to use Defendants' website and mobile app, Plaintiffs have actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

55.     There are readily available, well established guidelines, available to Defendants on the Internet, for designing, constructing and maintaining websites and mobile apps to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. In addition, incorporating these basic changes and adding certain elements to Defendants' website and mobile app accessible would not fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants. Because maintaining and providing a website where all functions can be performed using a keyboard, would provide full, independent and equal accessible to all consumers, to the website and mobile app, Plaintiffs alleges that Defendants have engaged in acts of intentional discrimination including, but not limited to the following policies or practices::

        a.     Construction and maintenance of a website and mobile app that are inaccessible

15

to visually-impaired individuals, including Plaintiffs;

b.   Failure to construct and maintain a website and mobile app that are sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiffs; and,

c.   Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiffs, as a member of a protected class.

56.   Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

57.   The ADA expressly contemplates the type of injunctive relief that Plaintiffs seek in this action.  In relevant part, the ADA requires:

"In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . ."
(42 U.S.C. § 12188(a)(2).)

58.   Because Defendants' website and mobile app have never been equally accessible, and because Defendants lack a corporate policy that is reasonably calculated to cause its websites to become and remain accessible, Plaintiffs invoke the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiffs ("Agreed Upon Consultant") to comply with the ADA and make the websites accessible.

59.   Plaintiffs seek that this permanent injunction require Defendants to cooperate with the Agreed Upon Consultant to:

a.   Train Defendants' employees and agents who develop the GrubHub.com website and GrubHub mobile app on accessibility and compliance with the

ADA;

b. Regularly check the accessibility of Defendants' website and mobile app to maintain accessibility as required by the ADA;

c. Regularly test end-user accessibility of the websites by screen-reader users to ensure that Defendants' website and mobile app are accessible to blind and visually-impaired individuals who would access them with screen-reading technology; and,

d. Develop an accessibility policy that is clearly disclosed on its website and mobile app, with contact information for users to report accessibility-related problems and be provided with meaningful resolution after Defendants have investigated and identified the accessibility-related problem.

60.    If GrubHub.com and Defendants' mobile app were accessible to screen-reader users, Plaintiffs and similarly situated blind and visually-impaired people could independently find Grub Hub participating restaurants, order food online for pick-up and delivery, browse menus, find information about menu items, learn about coupons, offers and discount codes, purchase gift cards.

61.    Although Defendants may currently have centralized policies regarding the maintenance and operation of its website and mobile app, Defendants lack a plan and policy reasonably calculated to make its website and mobile app fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

62.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Defendants' websites in violation of their rights.

**COUNT I**

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

63.    Plaintiffs re-allege and incorporate by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

64.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

(42 U.S.C. § 12182(a).)

65.    The ADA requires that the place of public accommodation not discriminate in any way in which it interacts with the public, whether by selling products at a physical location or over a virtual location on the Internet.[1]

66.    Defendants' website, GrubHub.com is therefore a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181.

67.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.    (42 U.S.C. § 12182(b)(1)(A)(i).)

68.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to

---

[1] Chief Judge Richard Posner of the Seventh Circuit Court of Appeals stated in dicta that the core meaning of the ADA's definition of discrimination is that the owner or operator of a facility, "whether in physical space or in electronic space" that is open to the public, cannot exclude disabled persons from entering the facility and using it in the same manner as do nondisabled persons.  (*Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (citing *Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Assoc. of New England*, 37 F.3d 12, 19 (1st Cir. 1994)).

deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.  (42 U.S.C. § 12182(b)(1)(A)(ii).)

69.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

70.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

71.     Plaintiffs, who are members of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

72.     Furthermore, Plaintiffs have been denied full and equal access to GrubHub.com, have not been provided services which are provided to other patrons who are not disabled, and have been provided services that are inferior to the services provided to non-disabled persons.

73.     Defendants have failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

74.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs, requests relief as set forth below.

**WHEREFORE,** Plaintiffs pray for judgment in his favor and against Defendants, as follows: a) A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendants' failure to take action that was reasonably calculated to ensure that its websites are fully and equally accessible to, and independently usable by, blind and visually-impaired individuals; b) A preliminary and permanent injunction enjoining Defendants from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to its website, GrubHub.com; c) A preliminary and permanent injunction requiring Defendants to take the steps necessary to make GrubHub.com readily accessible to and usable by blind and visually-impaired individuals; d) For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1); e) For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendants' discrimination; f) For prejudgment interest to the extent permitted by law; g) For costs of suit; and g) For such other and further relief as this Court deems just and proper.

## COUNT II

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

75.     Plaintiffs re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

76.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

(42 U.S.C. § 12182(a).)

77.     The ADA requires that the place of public accommodation not discriminate in any way in which it interacts with the public, whether by selling products at a physical location or over a virtual location on the Internet. (*See Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001)).

78.     Defendants' iOS mobile app is therefore a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181.

79.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.   (42 U.S.C. § 12182(b)(1)(A)(i).)

80.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.  (42 U.S.C. § 12182(b)(1)(A)(ii).)

81.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

21

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

82.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

83.     Plaintiffs, who are members of a protected class of persons under the ADA, have physical disabilities that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

84.     Furthermore, Plaintiffs have been denied full and equal access to Defendants' mobile app, have not been provided services which are provided to other patrons who are not disabled, and have been provided services that are inferior to the services provided to non-disabled persons.

85.     Defendants have failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

86.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

**WHEREFORE,** Plaintiffs pray for judgment in their favor and against Defendants, as follows: a) A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendants' failure to take action that was reasonably calculated to ensure that their websites are fully accessible to, and independently usable by, blind and visually-impaired individuals;  b) A preliminary and permanent injunction enjoining Defendants from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to its mobile app; c) A preliminary and permanent injunction requiring Defendants to take the steps

necessary to make their mobile app readily accessible to and usable by blind and visually-impaired individuals; d) For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1); e) For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiffs as a result of Defendants' discrimination;  f) For prejudgment interest to the extent permitted by law; g) For costs of suit; and h) For such other and further relief as this Court deems just and proper.

**COUNT III**

**VIOLATIONS OF THE UNRUH CIVIL
RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq*.**

89.     Plaintiffs re-allege and incorporate by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this third cause of action as though fully set forth herein.

90.     California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendants are systematically violating the UCRA, Civil Code § 51 *et seq*.

91.     Defendants' website is a "business establishment" within the meaning of the Civil Code § 51 *et seq*. Defendants generate millions of dollars in revenue from the sale of goods through its GrubHub.com website. Defendant's website, GrubHub.com, is a service provided by Defendants that is inaccessible to patrons who are blind or visually-impaired like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendants make available to the non-disabled public.  Defendants are

violating the UCRA, Civil Code § 51 *et seq.*, by denying visually-impaired customers the goods and services provided on their website, GrubHub.com. These violations are ongoing.

92.     Defendants' actions constitute intentional discrimination against Plaintiffs on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendants have constructed a website that is inaccessible to Plaintiff, Defendants maintain the website in an inaccessible format, and Defendants have failed to take actions to correct these barriers.

93.     Defendants are also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above. Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

94.     The actions of Defendants violate UCRA, Civil Code § 51 *et seq.*, and Plaintiffs are therefore entitled to injunctive relief remedying the discrimination.

95.     Plaintiffs are entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

96.     Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiffs pray for judgment in his favor and against Defendants, as follows: a) A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of the UCRA, Civil Code § 51 *et seq.*, for Defendants' failure to take action that was reasonably calculated to ensure that its websites are fully and equally accessible to, and independently usable by, blind and visually-impaired individuals; b) A preliminary and permanent injunction enjoining Defendants from further violations of the of the UCRA, Civil Code § 51 *et seq.*, with respect to its website, GrubHub.com; c) A preliminary and permanent injunction requiring Defendants to take the steps necessary to make GrubHub.com

readily accessible to and usable by blind and visually-impaired individuals; d) For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to of the UCRA, Civil Code § 51 *et seq.*; e) For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendants' discrimination; f) For prejudgment interest to the extent permitted by law; g) For costs of suit; and h)For such other and further relief as this Court deems just and proper.

## COUNT IV

## VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.*

97.    Plaintiffs re-allege and incorporate by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this third cause of action as though fully set forth herein.

98.    California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendants are systematically violating the UCRA, Civil Code § 51 *et seq.*

99.    Defendants' mobile app is a "business establishment" within the meaning of the Civil Code § 51 *et seq.*  Defendants generate millions of dollars in revenue from the sale of goods through their mobile app, is a service provided by Defendants that is inaccessible to patrons who are blind or visually-impaired like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Defendants are violating the UCRA, Civil Code § 51 et seq., by denying visually-impaired customers the goods and services provided on its mobile app. These

violations are ongoing.

100.    Defendants' actions constitute intentional discrimination against Plaintiffs on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendants have constructed a mobile website that is inaccessible to Plaintiffs, Defendants maintain the mobile website in an inaccessible format, and Defendants have failed to take actions to correct these barriers.

101.    Defendants are also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above.  Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

102.    The actions of Defendants violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

103.    Plaintiffs are entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

104.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiffs pray for judgment in his favor and against Defendants, as follows: a) A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of the UCRA, Civil Code § 51 *et seq.*, for Defendants' failure to take action that was reasonably calculated to ensure that its websites are fully and equally accessible to, and independently usable by, blind and visually-impaired individuals;   b) A preliminary and permanent injunction enjoining Defendants from further violations of the of the UCRA, Civil Code § 51 *et seq.*, with respect to its website, GrubHub.com; c) A preliminary and permanent injunction requiring Defendants to take the steps necessary to make GrubHub.com

readily accessible to and usable by blind and visually-impaired individuals; d) For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to of the UCRA, Civil Code § 51 *et seq.*; e) For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendants' discrimination; f) For prejudgment interest to the extent permitted by law; g) For costs of suit; and h) For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demands trial by jury.

Dated: July 7, 2017                    *Respectfully submitted,*

                                       */s/ Rusty A. Payton*
                                       Rusty A. Payton
                                       Marc E. Dann
                                       DannLaw
                                       115 S. LaSalle Street, Suite 2600
                                       Chicago, Illinois 60603
                                       (312) 702-1000
                                       (312) 702-1000 (fax)
                                       payton@paytondann.com
                                       mdann@dannlaw.com
                                       *Counsel of Record for Plaintiffs*
                                       *Corey Reed and Sean Gorecki*

                                       Joseph R. Manning, Jr.
                                       *Pro Hac Admission to be sought*